**COMMUNICATION BROKERS OF AMERICA, INC., Plaintiff,**

v.

**The CHESAPEAKE AND POTOMAC TELEPHONE COMPANY OF VIRGINIA, Defendant.**

**Civ. A. No. 72–C–141–R.**

United States District Court,
W. D. Virginia,
Roanoke Division.

Jan. 22, 1974.

Harvey S. Lutins, Roanoke, Va., for plaintiff.

Lewis T. Booker, Carl W. Tobias, Hunton, Williams, Gay & Gibson, Richmond, Va., for defendant.

OPINION and ORDER

TURK, Chief Judge.

This is a private anti-trust action initiated by Communication Brokers of America, Inc. (hereinafter referred to as CBA or plaintiff), a Virginia corporation engaged in the business of selling, leasing, installing, repairing and servicing communication equipment, against the Chesapeake and Potomac Telephone Company of Virginia, (hereinafter referred to as C & P or defendant), a Virginia corporation providing telephone service in its franchised area throughout the state of Virginia. Plaintiff alleges in its complaint that C & P has sought to unduly restrain competition by plaintiff in deliberately delaying the procurement of "interface devices" necessary for the interconnection of CBA's equipment to C & P's network; in refusing to accept and acknowledge orders placed by CBA for such interface devices; and in advising CBA's customers that such interface devices were not readily available when in fact they

were.[1] Plaintiff asserts that defendant's conduct amounts to a violation of the Sherman Anti-Trust Act, 15 U.S.C. § 1 et seq., for which it asks for triple damages and injunctive relief. Jurisdiction in this court is pursuant to §§ 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.

In May, 1973 the court overruled defendant's motion for summary judgment but expressly reserved the right to reconsider the motion at a later time. Defendant has now renewed its motion and in support thereof has advanced two arguments: C & P first contends that plaintiff is precluded from relief in this court because of its failure to exhaust its administrative remedies; secondly, C & P argues that it is not subject to the anti-trust laws because of the "state action" exemption set forth in Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L. Ed. 315 (1943). For purposes of defendant's motion for summary judgment this court has assumed the truth of plaintiff's allegations that defendant deliberately delayed the procurement of interface devices, that it refused to acknowledge and accept orders from plaintiff and that it advised plaintiff's customers that such devices were not readily available—all in an effort to unduly restrain competition. On the basis of such assumptions this court is of the opinion that this action should at this time be dismissed because of the plaintiff's failure to pursue its administrative remedies in the first instance.

The Virginia Constitution vests in the State Corporation Commission of Virginia the power and duty of regulating the "rates, charges, and services" of telephone companies. Va.Const. Art. IX, § 2. This is supplemented by numerous statutory provisions, Va.Code Ann. §§ 56-35, 56-458 to 56-484 (1969), which leave no question that the regulation of telephone companies by the State Corporation Commission of Virginia is comprehensive and pervasive. The service provided by C & P to plaintiff is regulated by a tariff approved by, and on file with the State Corporation Commission, S.C.C.-Va.-No. 205, and this tariff appears to control the actions of C & P about which plaintiff complains.

In the recent case of Business Aides, Inc. v. Chesapeake and Potomac Telephone Company of Virginia, 480 F.2d 754 (4th Cir. 1973) the court of appeals considered whether a plaintiff could maintain a private anti-trust action against C & P for refusing to supply certain equipment necessary to join two separate exchanges. The court held that C & P acted within the ambit of its operative tariff and was thus exempt from federal anti-trust laws under the "state action" doctrine of Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943).[2] In the course of its opinion the court also recognized the availability of state administrative and judicial relief.

"[N]o authority is given C & P to refuse service to any bureau requesting it; on the contrary, both statute and tariff direct C & P to supply authorized service anywhere along its lines as requested. . . . The Virginia Constitution and Code provide an adequate remedy to any bureau

1. Interface devices are mechanisms which allow direct electrical connection of customer-provided equipment to C & P's telephone network. The service provided by C & P to CBA is governed by tariff approved by and on file with the State Corporation Commission of Virginia, and the tariff requires that any direct electrical connection of customer-provided communication systems be accomplished only through an interface device provided by C & P. Such devices are not manufactured by C & P but are procured from independent suppliers.

2. In *Parker* a three-judge district court had found that a California program to regulate the marketing of raisins violated the Sherman Act. The program was proposed by private producers and was administered by industry members subject to affirmative approval by the California Agricultural Prorate Advisory Commission. On appeal to the Supreme Court, the district court decision was reversed on the basis that the Sherman Act was not meant to restrain "state action or official action directed by a state." 317 U.S. at 351, 63 S.Ct. at 313.

which feels it has not received authorized service. The bureau may seek relief by complaint to the SCC, which has an affirmative duty to maintain active control over the practices of Virginia transmission companies, with an appeal as of right directly to the Virginia Supreme Court from an adverse decision by the SCC. [Citing Va.Const. Art. IX, §§ 2, 4 (1973 replacement); Va.Code Ann. §§ 56–6, 35, 234, 239, 247, 478, 479 (1969).]" 480 F.2d 757, 758.

Plaintiff's counsel is correct in his assertion that *Business Aides, Inc.* is not dispositive of the case at bar in that the court there considered the substantive provisions of the operative tariff in an attempt to determine whether C & P "acted pursuant to the direction of the state in refusing to provide the requested services." 480 F.2d at 756. On the other hand, *Business Aides, Inc.* may be read more broadly to encompass the proposition that plaintiff is required to seek relief under the comprehensive state regulatory scheme before bringing an anti-trust action. Quoting from its earlier decision in Washington Gas Light Co. v. Virginia Electric & Power Co., 438 F.2d 248, at 252 (4th Cir. 1971) the court in *Business Aides, Inc.* again held:

"The antitrust laws are a poor substitute, we think, for plaintiff's failure to promply protest to the SCC and to seek the administrative remedy ultimately shown to have been available and effective. We think VEPCO's promotional practices were at all times within the ambit of regulation and under the control of the SCC, and we hold these practices exempt from the application of the laws of antitrust under the *Parker* doctrine." 480 F.2d at 758.

In *Washington Gas Light Co.*, supra, the court reversed the district court's determination that VEPCO's underground residential distribution plan was a *per se* violation of the Sherman and Clayton Acts, because of the "state action" exemption of Parker v. Brown. The court found that the Virginia State Corporation Commission had the power to prescribe rates and regulate other corporate utility activity and was thus "a proper state agency to qualify under *Parker*". 438 F.2d at 251. The court held that even though the State Corporation Commission was aware of VEPCO's activities and yet had made no investigation and had given no affirmative approval to these activities, its silence justified the inference that it approved the plan in question, thus making the plan exempt under the *Parker* doctrine. Plaintiff would distinguish this case on the grounds that it concerned promotional activities and that a different commodity, electricity, was involved. This court fails to see the logic in such distinctions, and thus arguably the expansive effect given to the *Parker* doctrine in *Washington Gas Light Co.* would justify a similar ruling in the case at bar irrespective of plaintiff's failure to pursue his administrative remedies. But such a reading of *Washington Gas Light Co.* is probably not justified in light of the approach taken in *Business Aides, Inc.*, and accordingly at this time the court declines to accept defendant's argument that summary judgment should be granted on the basis of a "state action" exemption of its activities.[3] Nevertheless, this court is of the opinion that Washington Gas Light Co. and Business Aides, Inc., taken together, provide support for the conclusion in

3. The Supreme Court limited the doctrine of "state exemption" in *Parker* by stating that "a state does not give immunity to those who violate the Sherman Act by authorizing them to violate it, or by declaring their action is lawful." 317 U.S. at 351, 63 S.Ct. at 314. It is thus possible that after pursuing its administrative remedies, plaintiff could proceed with an anti-trust action.

**970**

this case that the anti-trust laws should not be utilized in the first instance in an area in which the state has provided for comprehensive regulation and redress of grievances.

In CSI/Communications Systems, Inc. v. South Central Bell Telephone Company, 346 F.Supp. 487 (E.D.Tenn. 1971), a case factually indistinguishable from the case at bar, the court held that primary jurisdiction of the alleged violation of the Sherman Act was with the Federal Communications Commission or the Public Service Commission of Tennessee. Similarly in Carter v. American Telephone & Telegraph Company, 365 F.2d 486 (5th Cir. 1966), the court held that primary jurisdiction of an alleged anti-trust violation was with the Federal Communications Commission. The reasoning and authority exhaustively set forth in *Carter* are persuasive and lead this court to conclude that primary jurisdiction of the case at bar is with the Virginia State Corporation Commission. Plaintiff's answers to interrogatories show that its only effort to pursue its administrative remedies was in the form of a verbal complaint to the State Corporation Commission that C & P delayed installation of two of its customers. Plaintiff has apparently made no formal complaints or written protests to the Commission. Although plaintiff's allegations do not call into question the validity of the operative tariff, they surely allege violations of the tariff as well as state law.[4] This court is convinced that in such a case plaintiff is required to pursue its administrative remedies before relying on federal anti-trust laws. Accordingly, defendant's motion for summary judgment is granted for the reason that primary jurisdiction of this case lies with the Virginia State Corporation Commission.

---

4. Va.Code Ann. § 56–234 (1969):
"It shall be the duty of every public utility to furnish reasonably adequate service and facilities at reasonable and just rates to any person, firm or corporation along its lines desiring same. . . . "